Eastern District of Kentucky
F I L E D

NOV 2 0 2019

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

CRIMINAL ACTION NO. 5:19-190-DCR

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | **PLEA AGREEMENT** |
| MAXWELL HAYSLIP | DEFENDANT |

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Counts 1, 2, 3, 4, and 5 of the Information, which charge violations of 18 U.S.C. § 2113(a), bank robbery by intimidation.

2. The essential elements of each Count are:

   (a) The Defendant knowingly and intentionally took money belonging to, or in the care, custody, control, management, or possession of, a bank, from a bank employee, or from a bank while a bank employee was present;

   (b) The Defendant did so by intimidation; and

   (c) At that time, the deposits of the bank were insured by the Federal Deposit Insurance Corporation (FDIC).

3. The United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits that these facts are true:

   (a) On November 13, 2018, around 3:40 p.m. Eastern Time, the Defendant robbed Chase Bank, located at 2260 Nicholasville Road, Lexington, Kentucky 40503, of approximately $2,653. The Defendant used a demand note to effectuate

the robbery that, at a minimum, informed the teller that a robbery was occurring and demanded $100s and $50s. He displayed the note to the teller. The teller actually gave the Defendant approximately $2,653, and the Defendant left the bank with the money. The Defendant, thus, knowingly and intentionally took by intimidation from the person or presence of another money belonging to, or in the care, custody, control, management, or possession of, a bank. At all relevant times, the deposits of Chase Bank were (and are) insured by the FDIC. The conduct underlying Count 1 occurred in the Eastern District of Kentucky.

(b) On September 17, 2018, around 3:25 p.m. Central Time, the Defendant robbed U.S. Bank, located at 2504 Old Fort Parkway, Murfreesboro, Tennessee 37128, of approximately $395. The Defendant passed a note to the teller that read, "This is a robbery, give me all your 100's and 50's. Don't pull alarm." The Defendant looked at the teller and said aloud, "Now." The teller actually gave the Defendant approximately $395, and the Defendant left the bank with the money. The Defendant, thus, knowingly and intentionally took by intimidation from the person or presence of another money belonging to, or in the care, custody, control, management, or possession of, a bank. At all relevant times, the deposits of U.S. Bank were (and are) insured by the FDIC. The conduct underlying Count 2 occurred in the Middle District of Tennessee.

(c) On September 5, 2018, around 3:15 p.m. Central Time, the Defendant robbed U.S. Bank, located at 4241 Harding Pike, Nashville, Tennessee 37205, of approximately $4,000. The Defendant passed a note to the teller that read, "I am robbing you. I only want 50s and 100s. Do not sound the alarm or call 911." The teller actually gave the Defendant approximately $4,000, and the Defendant left the bank with the money. The Defendant, thus, knowingly and intentionally took by intimidation from the person or presence of another money belonging to, or in the care, custody, control, management, or possession of, a bank. At all relevant times, the deposits of U.S. Bank were (and are) insured by the FDIC. The conduct underlying Count 3 occurred in the Middle District of Tennessee.

(d) On August 22, 2018, around 3:35 p.m. Central Time, the Defendant robbed U.S. Bank, located at 810 Lain Avenue, Bowling Green, Kentucky 42101, of approximately $6,800. The Defendant passed a note to the teller that read, "This is a robbery. I want 50's and 100's." The teller actually gave the Defendant approximately $6,800, and the Defendant left the bank with the money. The Defendant, thus, knowingly and intentionally took by intimidation from the person or presence of another money belonging to, or in the care, custody, control, management, or possession of, a bank. At all relevant times, the deposits of U.S. Bank were (and are) insured by the FDIC. The conduct underlying Count 4 occurred in the Western District of Kentucky.

(e) On August 7, 2018, around 4:20 p.m. Eastern Time, the Defendant robbed SunTrust Bank, located at 1371 South Park Street, Carrollton, Georgia 30117, of approximately $410. The Defendant passed a note to the teller that read, "Give me 100's & 50's" and included an instruction not to call police. The teller actually gave the Defendant approximately $410, and the Defendant left the bank with the money. The Defendant, thus, knowingly and intentionally took by intimidation from the person or presence of another money belonging to, or in the care, custody, control, management, or possession of, a bank. At all relevant times, the deposits of SunTrust Bank were (and are) insured by the FDIC. The conduct underlying Count 5 occurred in the Northern District of Georgia.

4. The statutory punishment for each Count is imprisonment for not more than 20 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. Mandatory special assessments of $100 for each Count apply, for a total of $500, and the Defendant will pay the special assessments to the U.S. District Court Clerk by the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. The following recommendations do not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes, but is not limited to, the conduct described in ¶ 3 and detailed in the provided discovery materials.

    (c) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for each Count is 20.

    (d) Pursuant to U.S.S.G. § 2B3.1(b)(1), increase the offense level for each Count by 2 because the property of a financial institution was taken.

3

(e) The United States intends to advocate for a 2-level increase in the offense level for Count 1, pursuant to U.S.S.G. § 2B3.1(b)(2)(F), because a threat of death was made. The Defendant reserves the right to argue against this enhancement.

(f) Do not group the Counts under U.S.S.G. Ch. 3, Part D. Pursuant to U.S.S.G. § 3D1.4, increase the combined offense level by 4 levels.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

(h) Pursuant to U.S.S.G. § 5E1.1, total restitution is $14,258, and the victims are the banks listed in ¶¶ 3(a)-(e). In accordance with 18 U.S.C. §§ 3663 & 3663A, the Defendant agrees and consents to the Court imposing restitution obligations of the amounts listed in ¶¶ 3(a)-(e), totaling $14,258, in the Judgment.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty pleas and convictions. The Defendant waives the right to appeal any determination made by the Court at sentencing, with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty pleas, convictions, and sentence.

4

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. With the sole exception set out in this paragraph, this Agreement does not bind the United States Attorney's Offices in other Districts, or any other federal, state, or local prosecuting authorities. The sole exception is that this Agreement contemplates resolution of charges in the Middle District of Tennessee, the Western District of Kentucky, and the Northern District of Georgia. The entry of guilty pleas in the Eastern District of Kentucky regarding the conduct that occurred in each of those Districts will bind the USAOs in each

respective District, as to the conduct that occurred in each respective District. The USAOs in the EDKY, MDTN, WDKY, and NDGA will not further prosecute the Defendant for conduct prior to the date of this Agreement that was part of the same course of criminal conduct described in the Information and this Agreement and that was known by the USAOs at the time of the execution of this Agreement.

14. The Defendant, and the Defendant's attorney, acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant=s entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 11/20/19     By: _____
                        James T. Chapman
                        Special Assistant U.S. Attorney

Date: 11/20/19     _____
                    Maxwell Hayslip
                    Defendant

Date: 11/20/19     _____
                    Mary Ann Leichty
                    Attorney for Defendant